BOWMAN v. DAVIS ET AL.

**Judicial sale:** SHERIFF'S DEED: EQUITY. The possession of a sheriff's deed executed upon the statement of the grantee's assignor, that he owned the certificate of sale but had lost or mislaid it, will not conclude the real holder of the certificate. When the equities are with the latter, and the deed executed by the sheriff is unauthorized, it will be set aside.

*Appeal from Clayton District Court.*

FRIDAY, SEPTEMBER 25.

THIS is a suit in equity to require James Davis, as sheriff of Clayton county, to make a deed pursuant to a certificate of sale given by him upon a sale under execution; and to cancel a

former deed made by him to the defendant, George J. Brown, and a conveyance by Brown to the defendants, William and John Flemming. The whole case turns upon the single question of the ownership of the certificate. The trial was by the first method, and judgment was rendered for the defendants. The plaintiff appeals.

*A. J. Jordan & Elijah Odell,* for appellant.

*Noble, Hatch & Frese,* for appellees.

*George J. Brown, pro se,* appellee.

COLE, J.—This case is triable here *de novo* upon the evidence. It involves a single question of fact, to-wit: who owns the sheriff's certificate of sale to the lots in controversy. The plaintiff asserts his ownership, and the defendants, Davis and the Flemmings, aver the ownership to have been in George J. Brown, at the time the sheriff's deed was made to him, and when he conveyed to the Flemmings. The testimony may be summed as follows:

The plaintiff shows that the lots in controversy, lots 5, 6, 7, 8, in block 19 of North McGregor, were duly sold at sheriff's sale, January 28, 1863, and were bid off by Updegraff in trust for Jedediah Brown, the father of George J. Brown, and the usual certificate of sale was made and delivered to Updegraff. Updegraff assigned the certificate to Jedediah Brown, February 29, 1863. In December, 1864, Jedediah Brown made an assignment upon said certificate, but blank as to the assignee, and left it in the hands of Updegraff. How it passed out of his hands is not shown. But the plaintiff testifies that he purchased it of Jedediah Brown for $250, and paid him for it by a settlement between himself and said Brown as partners, and that said Brown wrote plaintiff's name in the blank space in the assignment, before written and then on it, and handed it to plaintiff.

The original paper shows that the name first written in the blank space of the assignment has been erased, and a name afterwards written therein. This the plaintiff explains in his

evidence by testifying that in 1869, he had George·J. Brown in his employment, and on a certain day he found him erasing plaintiff's name from the assignment, and on so doing, directed him to re-write plaintiff's name therein, and he did so; and that this occurred in the presence of Thos. Owen and A. S. Smith, and perhaps others.

The defendants introduce the testimony of Updegraff, William Flemming, McCraney and Hoxsie, each of whom testifies that he saw the certificate before the erasure, and that it then had the name of George J. Brown, written in the original blank space in the assignment; and also the testimony of Duff that he had seen and examined the assignment and erasure, and that he could trace some of the letters of George J. Brown's name as still remaining after the erasure, and upon the instrument as· it now appears. The defendants further show that the defendants, Flemmings, first leased the lots of George J. Brown, in 1866 or 1867, and that in 1867 they saw the certificate in the hands or possession of George J. Brown; that afterwards and in 1867, the defendants, Flemmings, purchased the lots of George at $900, and paid $300 cash and gave two notes for $300 each. It is also shown that in 1867, and probably before the sale to Flemmings, the defendant, Davis, as sheriff, conveyed the lots to George J. Brown, that George, at the time did not have the certificate, but said it was lost or mislaid, and the sheriff thereupon told him that he could probably prepare the deed from the sheriff's return of the sale. A deed was prepared by, George J. Brown and the sheriff signed it; this deed was recorded May 4, 1867, and the one by George to the Flemmings was recorded July 22, 1868. The plaintiff presented the certificate to the sheriff, tendered the fee and demanded a deed before bringing this action, which was commenced August 29, 1872.

The plaintiff then called George J. Brown, the defendant, who testified that he thought at one time from what his father, Jedediah Brown, said that he intended to give the certificate to him, (the witness George,) but he never did; that his name was never written in the assignment; that he knows his father's hand writing, and the first name that was written in the blank

space of the assignment was J. A. Bowman, and it was written there by his father, Jedediah Brown; that while he was in Bowman's employment, he found the certificate among Bowman's papers and took it and was erasing Bowman's name, when he came in and said, "George, what are you doing, I want you to re-write my name in that certificate," and witness did so. That he did have the certificate in his possession sometime in the fall of 1866, but the only paper he ever showed the Flemmings was the sheriff's deed, and that he did not have the certificate, or know where it was when the deed was made to him; that he sold the lots to Flemmings supposing his father intended to give them to him.

The plaintiff also introduced A. S. Smith, who testified to the facts respecting the erasure substantially as stated by the plaintiff and by George J. Brown, and further, that George then said that he " had sold the lots to some men in McGregor and, in order to make the title good, must have the certificate and put his name in the assignment; " and also, that Bowman and George had some hard words, and it ended in the writing by George of Bowman's name in the place where the erasing had been done. The Flemmings paid the taxes for 1867 to 1871 inclusive.

This is substantially all the testimony. It does not make a case free from doubt. That plaintiff bought the certificate and paid for it, is not controverted by the evidence. That George J. Brown never paid anything for it, and never bought it, is equally uncontroverted by the evidence. In view of the conflict as to the name of George J. Brown ever being written in the assignment, and the character for truth of none of the witnesses being even assailed, it is perhaps more legitimate to hold that defendant's witnesses are more likely to be mistaken in their *recollection* of the name they saw, than to hold that the plaintiff and George J. Brown are *guilty of perjury*, for of this they both must be guilty if the name of George J. Brown was ever there. The equities are with plaintiff. The lapse of time is the strongest fact against him. The sheriff's deed was given without authority, and is entitled to no weight. And if this was in form, which it is in practical effect, a con-

troversy between Bowman and the Flemmings as to which is entitled to the sheriff's deed upon the certificate, it would seem that the holder of the certificate who had paid for it, should have the deed, instead of the party who did not have the certificate, and whose only claim to it was through another who never paid anything for it, and who testifies that he never had any right to it.

· Our conclusion, therefore, is, that the plaintiff is entitled to the conveyance from the sheriff; that the former sheriff's deed to Brown and his deed to Flemmings be set aside; that an account be taken of the taxes paid by defendants and for any permanent improvements made by them, rents to be set off against the latter, and that they be repaid and allowed a lien therefor.

REVERSED.